In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00019-CV


______________________________




DAVID LEE GEORGE, Appellant



V.



FRED I. SMITH AND MARTHA SMITH, Appellees




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 99-0597




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 David Lee George appeals from the trial court's denial of his Motion for New Trial. A no-answer default judgment and an award of unliquidated damages were rendered in favor of Fred I. and
Martha Smith. George timely filed a Motion for New Trial in which he sought to establish, through
pleadings and affidavits, the three elements necessary to warrant granting his motion and vacating
the no-answer default judgment. After a hearing, the trial court denied George's Motion for New
Trial.

Factual Background

 The trial court rendered a no-answer default judgment and awarded unliquidated damages
in favor of Fred I. and Martha Smith. This suit arose from a car accident that occurred
September 21, 1997. George was traveling eastbound on the westbound side of the highway when
he struck a guardrail and then the Smiths' car. Two lawsuits arising from this accident were filed in
July 1999. The two causes had similar styles, but differed in how a third-party insurance company
was listed. In September 1999, the sheriff's office called George to notify him of papers they had
for him to pick up. George contacted his attorney, who advised him to wait until he was served. 
Despite the fact that George was not served until November 10, 1999, his attorney attempted to file
the same general denial for both cases in September 1999. The answer was actually filed with the
clerk in one case, but due to a typographical mistake, an answer was not filed in the case now before
this court. George took no further action for more than a year. In November 2000, the Smiths were
awarded a no-answer default judgment. Although there was no evidentiary hearing and no evidence
was submitted by affidavit or otherwise, the judgment included unliquidated damages. The trial
court denied George's Motion for New Trial after a hearing in January 2001.

Issues Presented

 George complains on appeal that the trial court erred by declining to grant a new trial even
though he established the requisite elements to have the default set aside in a timely motion for new
trial. In the alternative, he contends that the trial court erred by awarding unliquidated damages with
no supporting evidence. George further contends that he is entitled to a new trial as to damages
because, through no fault of his own, he is unable to procure a reporter's record of any evidentiary
hearings by which he can present his no-evidence argument on appeal. Because we find for George
on the first point of error, we do not reach his remaining grounds of error. The judgment of the trial
court is reversed, and the cause is remanded for trial.

The Craddock Test

 By his first point of error, George asserts that he is entitled to a new trial under Craddock v.
Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124 (1939). Determining whether to grant or deny
a motion for new trial is a matter which falls within the sound discretion of the trial judge. Bank
One, Texas, N. Am. v. Moody, 830 S.W.2d 81, 85 (Tex. 1992); Strackbein v. Prewitt, 671 S.W.2d
37, 38 (Tex. 1984). The trial judge's decision will not be disturbed absent an abuse of discretion. 
Strackbein, 671 S.W.2d at 38. The trial judge's application of law to the facts, however, is given less
deference than findings of fact. Greiner v. Jameson, 865 S.W.2d 493, 498 (Tex. App.-Dallas 1993,
writ denied). The trial court does not have unbridled discretion to decide a motion for new trial, but
instead must rely on guiding rules and principles in reaching its decision. See Craddock, 133 S.W.2d
at 126.

 Craddock sets forth the three elements of proof required to obtain a new trial following a no-answer default judgment. Id. George bears the burden of showing that: (1) his failure to answer
before judgment was neither intentional nor the result of conscious indifference, but was due to
mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) granting the
motion will occasion no delay or otherwise injure the plaintiff. Id.; accord Estate of Pollack v.
McMurrey, 858 S.W.2d 388, 390 (Tex. 1993). A trial court abuses its discretion by not granting a
new trial when all three Craddock elements are met. Moody, 830 S.W.2d at 85.

Absence of Intent or Conscious Indifference

 Whether the failure to file an answer was the result of conscious indifference is a fact
question. Pollack, 858 S.W.2d at 391. Factual determinations are reviewed only for abuse of
discretion. The trial court does not abuse its discretion if some evidence reasonably supports its
decision. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). When a defendant relies on his agent
to file an answer, he must demonstrate that both he and his agent were free of conscious indifference. 
Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). 

 George's argument is based on a typographical error in the cause number. William J.
Huddleston, George's attorney, filed an Affidavit along with the Motion for New Trial stating that
he attempted to file an answer to two separate lawsuits by typing the two cause numbers at the top
of a single general denial. This pleading was to be filed with the clerk in both cases. One cause
number (99-0628) was mistakenly typed twice, while the other (99-0597, and the subject of this
appeal) was omitted. Consequently, an answer was filed on September 17, 1999, but only in cause
number 99-0628. At the hearing on George's motion to set aside the default judgment and for new
trial, the trial court found that his failure to file an answer prior to the date of the default judgment
was due to accident or mistake, not conscious indifference. There is sufficient evidence in the record
to support the trial court's finding on this issue. See Davis, 571 S.W.2d at 862. The first prong of
the Craddock test is satisfied.

Meritorious Defense

 George presents three arguments purporting to satisfy the meritorious defense prong of
Craddock: comparative negligence, statute of limitations, and assignment of claim. Whether George
has met his burden on this prong of the test is a legal question, and the trial court's determination is
not entitled to the same degree of deference as it is under the first prong. See Greiner, 865 S.W.2d
at 498. A meritorious defense is one that, if proven, would cause a different result when the case is
tried again. Holliday v. Holliday, 72 Tex. 581, 10 S.W. 690, 692 (1889); Farley v. Clark Equip. Co.,
484 S.W.2d 142, 147 (Tex. Civ. App.-Amarillo 1972, writ ref'd n.r.e.). To set up a meritorious
defense, the defendant need only allege facts which constitute a prima facie defense to the plaintiff's
cause of action, supported by affidavits or other evidence. Ivy v. Carrell, 407 S.W.2d 212, 214 (Tex.
1966). The facts alleged must be sufficiently specific; mere conclusory statements are insufficient. 
Id. 

Meritorious Defense: Comparative Negligence

 We turn first to George's comparative negligence defense. Along with his original Motion
for New Trial, George submitted his own Affidavit that reads:

 I have a meritorious defense because the plaintiff(s) operating the other car in the
accident failed to act in a reasonable and prudent manner by failing to turn to the
right or left to avoid the collision, timely applying the brakes, and/or keeping a
carefull [sic] lookout.


The allegations are specific enough under Ivy, but they are insufficient to set up a defense. There
is no allegation that any act or failure to act on the part of the Smiths contributed to the cause of the
collision. George has not satisfied the minimal pleading burden on this prong of the test for
comparative negligence. (1)

Meritorious Defense: Statute of Limitations

 George's second proffered defense is that the cause of action was barred by the statute of
limitations. George's argument before the court is based on the two-year statute of limitations for
personal injury actions. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2002). 
The mere filing of a suit will not interrupt or toll the statute of limitations; rather, plaintiffs must
exercise reasonable diligence in procuring the issuance and service of citation to interrupt the statute. 
Rigo Mfg. Co. v. Thomas, 458 S.W.2d 180, 182 (Tex. 1970). To bring suit within the limitations
period prescribed by Section 16.003, the plaintiff must both file within the time period and use
diligence to have the defendant served with process. Gant v. DeLeon, 786 S.W.2d 259, 260 (Tex.
1990). When a plaintiff files a petition within the limitations period, but does not serve the
defendant until after the statutory period has expired, the date of service relates back to the date the
suit was filed if the plaintiff exercised diligence in effecting service. Id. To demonstrate diligence,
the plaintiff must show (1) that he acted as an ordinary prudent person would act under the same
circumstances and (2) that he so acted throughout, from filing suit to service of process. See Taylor
v. Thompson, 4 S.W.3d 63, 65 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd). The plaintiff must
demonstrate diligence from the date the suit is filed, not just from the date the limitations period
would have expired, in order for the date of service to relate back. See Zimmerman v. Massoni, 32
S.W.3d 254, 259 (Tex. App.-Austin 2000, pet. ref'd).

 George raised the limitations defense in a late-filed Motion for Leave to Supplement his
Motion for New Trial. This motion was filed after the thirty-day deadline for timely motions had
passed, but was taken up by the court at the hearing and was therefore properly before the court at
that time. The record shows that the accident occurred September 21, 1997. The statute of
limitations would thus run on September 21, 1999. The Smiths filed suit on July 19, 1999, and
citation issued that same day. George was not served until November 10, 1999. On the face of the
record, there is a three-and-one-half month delay between issuance of citation and service.

 The delay in this case is sufficient to establish a meritorious defense based on the statute of
limitations. Texas courts have consistently held that due diligence was lacking as a matter of law
based on unexplained lapses of three months or more between issuance of citation and service. See,
e.g., Rigo, 458 S.W.2d 180 (seventeen and one-half months between filing and service); Liles v.
Phillips, 677 S.W.2d 802 (Tex. App.-Fort Worth 1984, writ ref'd n.r.e.) (ten months between
expiration of statute of limitations and service); Allen v. Bentley Lab., Inc., 538 S.W.2d 857 (Tex.
Civ. App.-San Antonio 1976, writ ref'd n.r.e.) (six months between filing and service); Williams
v. Houston-Citizens Bank & Trust Co., 531 S.W.2d 434 (Tex. Civ. App.-Houston [14th Dist.] 1975,
writ ref'd n.r.e.) (seven and two-thirds months between expiration of first citation and issuance of
second citation); and Buie v. Couch, 126 S.W.2d 565 (Tex. Civ. App.-Waco 1939, writ ref'd) (three
and three-quarter months between filing and issuance of citation and one month between issuance
and service).

 The Smiths counter that the evidence they presented at the January 11 hearing was sufficient
to contest the fact of proper service, thereby requiring George to present testimonial evidence, citing
Pollack, 858 S.W.2d at 392. The Smiths also argue that the statute of limitations was tolled by
George's absence from the state, citing Tex. Civ. Prac. & Rem. Code Ann. § 16.063 (Vernon 1997). 
This argument fails, however, because the Craddock test does not permit the Smiths to present
contrary evidence offered against the meritorious defense prong.

 When the hearing on a motion for new trial is from a no-answer default and the issue under
consideration is the meritorious defense prong, the court should not deny the motion on the basis of
any contradictory affidavits or testimony offered by the plaintiff. (2) Guar. Bank v. Thompson, 632
S.W.2d 338, 339 (Tex. 1982). The defendant is only required to set up a meritorious defense, not
prove that he will win at trial. Once the defendant has met his burden of setting up a prima facie
meritorious defense by affidavits or other evidence, it is improper to try the defensive issues at the
hearing on the motion for new trial. Harlen v. Pfeffer, 693 S.W.2d 543, 546 (Tex.
App.-San Antonio 1985, no writ). A court cannot consider the merits of the defenses raised when
the motion for new trial is from a no-answer default. Gotcher v. Barnett, 757 S.W.2d 398, 404 (Tex.
App.-Houston [14th Dist.] 1988, no writ). To do so is an improper action, in contravention of
established precedent, and constitutes an abuse of discretion. Id. In passing on a motion for new
trial and the sufficiency of the evidence to support it, courts should exercise liberality in favor of the
defaulted party having his day in court. In re T.B.S., 601 S.W.2d 539, 543 (Tex. Civ. App.-Tyler
1980, no writ) (citing Hunsinger v. Boyd, 119 Tex. 182, 26 S.W.2d 905, 907-08 (1930); McCarthy
v. Jesperson, 527 S.W.2d 825, 827 (Tex. Civ. App.-El Paso 1975, no writ); Western Union
Telegraph Co. v. McGinnis, 508 S.W.2d 147, 150 (Tex. Civ. App.-San Antonio 1974, no writ)).

 The rationale is straightforward. Where the defendant, through accident or mistake, has
missed his day in court, he should be entitled to present his case in court. Concerns of judicial
economy do not apply, however unlikely the proposed defense may seem at first blush. At this stage
of a no-answer default proceeding, the evidence is likely to be underdeveloped, if developed at all,
because it has undergone no adversarial testing. 

 George offered no additional evidence at the hearing on his Motion for New Trial, but elected
to stand on his motion and supporting affidavits. As noted above, these were sufficient to set up a
meritorious defense based on the statute of limitations. The Smiths called Glenn Phillips to testify
about ongoing efforts made to serve George between July and November of 1999. The Smiths'
attorney then argued both diligence and the tolling provision, based on George's absence from the
jurisdiction. On completion of cross-examination and argument, the court stated that it found the
limitations defense lacked merit. 

 The Smiths should not have been permitted to introduce evidence relevant to either diligence
or the tolling provision. These are both fact issues that must be proven before the fact finder at trial
and are not proper subjects of judicial determination at this stage of the proceeding. The second
prong of Craddock calls for a purely legal finding. The trial court abused its discretion by
considering the merits of George's limitations defense. George has set up a meritorious defense
based on the statute of limitations and has thus met his burden under the second prong of Craddock.

No Delay or Injury

 As to the third prong of the test, the Texas Supreme Court has held that where defendants'
motion for new trial announced that they were ready to try the cause and that they would reimburse
the plaintiff for his costs in taking the default judgment, defendants satisfied the third prong of the
Craddock test. Strackbein, 671 S.W.2d at 39; HST Gathering Co. v. Motor Serv., Inc., 683 S.W.2d
743, 745 (Tex. App.-Corpus Christi 1984, no writ). This issue is a question of fact for the trial
court. 

 Along with his Motion for New Trial, George offered the following in his Affidavit: "A new
trial will not delay or prejudice the plaintiffs since my attorney and I are ready to try this case before
a jury. If Plaintiffs incurred any cost in taking the default judgment, I will reimburse them if I am
able." Nothing in the record suggests that the Smiths would suffer undue delay or injury. The
Smiths offered no contrary evidence, and no argument was offered on this issue at the January 11
hearing. Uncontroverted allegations are sufficient to conclusively establish questions of fact under
the Craddock test. See Strackbein, 671 S.W.2d at 38-39 (holding uncontroverted factual assertions
to be conclusive under the first prong of Craddock). Since George's factual assertions on this issue
are uncontroverted, they conclusively satisfy his burden on the third Craddock prong.

 The record shows George met all three prongs of the Craddock test. The trial court therefore
abused its discretion by refusing to grant the Motion for New Trial. See Moody, 830 S.W.2d at 85. 

Unliquidated Damages Award

 The trial court also committed reversible error by awarding unliquidated damages without
sufficient evidence to support the damages award. 

 A defaulting party admits all allegations of fact set out in the petition, except the amount of
damages. See Stoner v. Thompson, 578 S.W.2d 679, 684 (Tex. 1979). The damages issue separately
requires the plaintiff to prove a causal link between the plaintiff's injuries and the defendant's actions
to ascertain the amount of damages to which the plaintiff is entitled. Morgan v. Compugraphic
Corp., 675 S.W.2d 729, 732 (Tex. 1984). As the court held in Morgan,

 [T]he mandate of Rule 243 that the court hear "evidence as to damages" makes it
incumbent upon a party who obtains a default judgment in a personal injury action
to present competent evidence of a causal nexus between the event sued upon and the
party's alleged injuries.


Id. Rule 243 does not prescribe either the manner in which the hearing is to be conducted or the
character of the evidence which is required. Tex. R. Civ. P. 243. If damages are liquidated, no
hearing is necessary to present evidence of damages. Id. Rule 241 permits the trial court to assess
damages when the claim is liquidated and proved by an instrument in writing. Tex. R. Civ. P. 241;
Pentes Design, Inc. v. Perez, 840 S.W.2d 75, 79 (Tex. App.-Corpus Christi 1992, writ denied). 
Affidavits alone may be sufficient evidence to support an unliquidated damages award. Texas
Commerce Bank v. New, 3 S.W.3d 515, 516-17 (Tex. 1999). 

 The term liquidated as used in Rule 241 means that the amount can be calculated solely from
the instrument sued on and the factual allegations in the petition. Pentes Design, Inc., 840 S.W.2d
at 79. The written instrument must be attached to the petition. Abcon Paving, Inc. v. Crissup, 820
S.W.2d 951, 953 (Tex. App.-Fort Worth 1991, no writ); see also Alvarado v. Reif, 783 S.W.2d 303,
304-05 (Tex. App.-Eastland 1989, no writ) (affidavit verifying automobile repair estimate did not
transform unliquidated claim into liquidated claim). If liquidated claims are inadequately described
in the petition, they are considered unliquidated. Kelley v. Southwestern Bell Media, Inc., 745
S.W.2d 447, 448-49 (Tex. App.-Houston [1st Dist.] 1988, no writ). It is error for the trial court to
fail to conduct a hearing and to require proof of unliquidated damages before rendering a default
judgment for such damages. See Jones v. Andrews, 873 S.W.2d 102, 107 (Tex. App.-Dallas 1994,
no writ). 

 In the present case, the only information available to the court regarding damages was in the
form of medical records and summaries filed by the Smiths. The clerk's file contains some 220
pages of documents relating to medical expenses, treatment narratives, etc. These documents are
unsworn, unaccompanied by affidavits, and do not show that any of the treatments described therein
were reasonably necessary for the Smiths to incur as a result of their injuries. See Orkin
Exterminating Co. v. Davis, 620 S.W.2d 734, 737 (Tex. Civ. App.-Dallas 1981, writ ref'd n.r.e.). 

 These documents were filed with the clerk on November 1, 2000. The record shows that
although a hearing was scheduled to take place November 2, 2000, the Smiths cancelled the hearing. 
No hearing was held and no evidence presented regarding the damages award. The total amount
reflected in these documents is roughly $103,375. (3) The court rendered judgment for the Smiths on
November 6, 2000, in the amount of $575,000. That amount is over $470,000 greater than was
shown on paper by the plaintiffs. Not only is the latter amount unsupported by any documentary
evidence, the entire $575,000 is considered unliquidated under Abcon, Alvarado, and Kelley, because
no such evidence was attached to the petition or alleged therein. Further, the documents filed with
the clerk were unsworn and were unsupported by affidavits.

 If a no-evidence point is sustained as to unliquidated damages resulting from an uncontested,
no-answer default judgment, the appropriate disposition is remanded for a new trial on the issue of
unliquidated damages. See Heine, 835 S.W.2d at 86. The trial court erroneously failed to conduct
a hearing or to take evidence on unliquidated damages, and George would be entitled to an
evidentiary trial on this issue even if he had not satisfied the Craddock test.

No Record from which to Challenge Facts

 George also points to a separate error in granting the default judgment, because no record
exists by which he is able to challenge the sufficiency of the evidence to support the judgment. If
a defendant, through no fault of his own, is unable to procure a record of the evidence introduced,
a new trial will be required. Smith v. Smith, 544 S.W.2d 121, 123 (Tex. 1976); Alvarado, 783
S.W.2d at 304-05. Since no hearing was held and no evidence presented, there is no record from the
trial court regarding the damages award. Because George is entitled to a new trial on the merits,
however, we do not reach this point of error.

Conclusion

 The record shows George met all three prongs of the Craddock test. The trial court therefore
abused its discretion by refusing to grant the Motion for New Trial. See Moody, 830 S.W.2d at 85. 

 The judgment of the trial court, granting a default judgment, is hereby vacated, and the cause
is remanded to the trial court for trial on the merits.



 Ben Z. Grant

 Justice


Date Submitted: September 20, 2001

Date Decided: January 25, 2002


Do Not Publish
1. George also complains that the trial judge conducted a "summary mini-trial" on this point
by considering evidence contrary to George's allegations at the hearing on his Motion for New Trial. 
When considering the meritorious defense prong of Craddock v. Sunshine Bus Lines, 134 Tex. 388,
133 S.W.2d 124 (1939), the trial court should not deny the motion on the basis of any contradictory
affidavits or testimony offered by the opposing party. Guaranty Bank v. Thompson, 632 S.W.2d 338,
339 (Tex. 1982). The court did consider the merits of this defense, which was improper. There is
no reversible error, though, because George failed to allege sufficient facts to set up the defense.
2. The Smiths cite Pollack for the proposition that contested issues are ordinarily decided after
an evidentiary hearing at which live testimony is taken. See Estate of Pollack v. McMurrey, 858
S.W.2d 388, 392 (Tex. 1993). This argument, though, ignores the footnote to the same paragraph,
wherein the Texas Supreme Court expressly distinguishes the conscious indifference prong then at
issue (a fact question) from the meritorious defense prong (a legal question) for which the no-contrary-evidence rule was established in Guar. Bank v. Thompson, 632 S.W.2d 338, 339 (Tex.
1982). Pollack, 858 S.W.2d at 392 n.3.
3. Total medical expenses taken at face value from plaintiffs' summary pages.



f'd). Where the record is silent as to why counsel failed to make an objection or take certain
actions, we will assume it was due to any strategic motivation that can be imagined, and the
appellant will have failed to rebut the presumption that trial counsel's actions were in some way
reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d
436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex. App.--Texarkana
2005, pet. ref'd). In other words, we will not conclude the challenged conduct deficient unless it was
so outrageous that no competent attorney would have engaged in it. Thompson, 9 S.W.3d 808; Fox,
175 S.W.3d at 485-86. 

 Next, it is not enough for Williams to show that the errors had some conceivable effect on
the outcome of the proceeding. See Strickland, 466 U.S. at 693. To meet the second prong of the
Strickland test, Williams must show that the deficient performance damaged his defense to such a
degree that there is a reasonable probability the result of the trial would have been different. See id.;
Tong, 25 S.W.3d at 712. We evaluate this factor while taking into consideration the totality of
representation and the particular circumstances of this case. Thompson, 9 S.W.3d at 813; Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 

 Even absent a record as to why counsel failed to object to the definitions, there is no question
that Williams can meet the first prong of the Strickland test. See Banks, 819 S.W.2d at 682. At the
time of Williams's trial, the law was clear that injury to a child was a result-oriented offense and that
he would be entitled to limit the definitions of the culpable mental states upon objection. See id. 
In this precise situation, "it cannot be argued that counsel's course of conduct was within the realm
of trial strategy." Id. Under the facts of this case, the intent to commit the act was tantamount to an
intention to commit the injuries. Thus, counsel's conduct in failing to object to the definitions "was
without any plausible basis." Id. 

 However, because we have concluded the application paragraphs of the charge focused the
jury on the result of Williams's conduct instead of the nature of his conduct, we conclude Williams
was not harmed by the erroneous definitions. Therefore, Williams fails to meet his burden that there
was a "reasonable probability that but for the error, the result would have been different." See Green,
891 S.W.2d at 299; Sanchez, 1995 WL 500400, at *3; Browning v. State, No. 01-93-00897-CR, 1995
WL 477546, at *9 (Tex. App.--Houston [1st Dist.] Aug. 10, 1995, pet. ref'd) (not designated for
publication). We overrule this point of error. 

V. Conclusion

 We find the evidence in this case was legally and factually sufficient to support Williams's
conviction. While the failure to limit the definitions of "knowingly" and "intentionally" in this
result-oriented offense was error, it was harmless since the application paragraphs correctly charged
the jury with respect to the required mental culpability. Because the error was harmless, Williams
cannot demonstrate that he received ineffective assistance of counsel. 

 We affirm the judgment of the trial court. 





 Bailey C. Moseley

 Justice


Date Submitted: February 19, 2009

Date Decided: February 25, 2009


Do Not Publish


1. There is a companion case to this (our cause number 06-08-00135-CR) which regards the
serious injury inflicted by Williams on the six-month-old brother of the victim here, who died while
being treated for the injuries he sustained. Williams was sentenced to fifty years' imprisonment, to
run concurrently with the sentence in this case, plus a $10,000.00 fine. 
2. This case was transferred to this Court by the Texas Supreme Court pursuant to its docket
equalization efforts. See Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware of any
conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. 
See Tex. R. App. P. 41.3.
3. In addition to suggesting that the children's mother was responsible, Williams argues for the
first time on appeal that it is improbable Williams beat the children because he only had five minutes
to do so after the time McMaryion left the apartment before Horton arrived. He also claims the
medical examiner's findings that R.H.'s broken bones showed some sign of healing undermined the
jury's verdict. This is contrary to Dr. Cox's analysis that the injuries occurred between 3:00 and
6:00 p.m. and fails to account for his explanation that the signs of healing probably occurred while
R.H. was in the hospital. The jury was free to disbelieve Williams's position. We do not find this
evidence undermined the jury's verdict. 
4. We distinguish this case with those cases cited by Williams in his briefing. In all of the
cases cited by Williams addressing this issue, the application paragraph of the charge erroneously
allowed conviction based on a finding that the defendant "knowingly and intentionally engage[d] in
conduct that caused" the result, i.e., bodily injury. Haggins v. State, 785 S.W.2d 827, 827-28 (Tex.
Crim. App. 1990); Kelly v. State, 748 S.W.2d 236, 237-38 (Tex. Crim. App. 1988); Alvarado, 704
S.W.2d at 37; Beggs v. State, 597 S.W.2d 375, 376-77 (Tex. Crim. App. [Panel Op.] 1980); Banks,
819 S.W.2d at 678. But see Spang v. State, 781 S.W.2d 713 (Tex. App.--Austin 1989, no pet.)
(affirming conviction); Samples v. State, 762 S.W.2d 751 (Tex. App.--Fort Worth 1988, no pet.)
(no discussion of application paragraph).